**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EDDIE DOMINGUEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2847** |
| **JAMES LEBLANC** | **SECTION: "S"(1)** |

**REPORT AND RECOMMENDATION**

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Eddie Dominguez,[1] is a state prisoner incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana. On March 21, 2013, he was convicted of manslaughter under Louisiana law.[2] On April 15, 2013, he was sentenced to a term of forty years imprisonment without benefit of probation or suspension of sentence.[3] On August 28, 2014, the

[1] In his federal application, petitioner's first name appears both as "Eddie" and "Eddy."
[2] State Rec., Vol. 4 of 6, transcript of March 21, 2013, p. 313; State Rec., Vol. 1 of 6, minute entry dated March 21, 2013; State Rec., Vol. 1 of 6, jury verdict form.
[3] State Rec., Vol. 4 of 6, transcript of April 15, 2013; State Rec., Vol. 1 of 6, minute entry dated April 15, 2013.

Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.[4]  On May 22, 2015, the Louisiana Supreme Court then denied his related writ application.[5]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[6]  The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts; however, the state argues that petitioner's claims have no merit.[7]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The

---

[4] State v. Dominguez, 148 So.3d 648 (La App. 5th Cir. 2014); State Rec., Vol. 1 of 6.
[5] State v. Dominguez, 170 So.3d 982 (La. 2015); State Rec., Vol. 1 of 6.
[6] Rec. Doc. 6.
[7] Rec. Doc. 20.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.”).

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court’s decision on the merits of such a claim unless that decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Courts have held that the “‘contrary to’ and ‘unreasonable application’ clauses [of § 2254(d)(1)] have independent meaning.” Bell, 535 U.S. at 694.

Regarding the “contrary to” clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court’s cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the “unreasonable application” clause, the United States Supreme Court has held: “[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner’s case.” White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court’s precedent; it does not require state courts to

> extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that*

> *there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On the evening of May 19, 2009, the Gretna Police Department received a call in reference to shots being fired. When they arrived on the scene, a witness said that she had seen two Hispanic males fleeing the area. The victim, Jonathan Flowers, was found on the canal bank. The forensic pathologist who performed the autopsy of Mr. Flowers stated that he died of a gunshot wound that traveled though the left lung, aorta and right lung. The victim also had lacerations to his face that were consistent with being hit in the face by a pistol. The pathologist agreed that the wounds to the victim's face could have also been caused by punches or kicks. A toxicology screen revealed the presence of marijuana. The victim had bags of marijuana and crack cocaine on his person.
>
> During the afternoon of May 19, 2009, defendant and his cousin, Bryan Rosales, were with Opal and Shelby Lukes at the Lukes' house, on Claire Avenue in Gretna, Louisiana. Defendant and Rosales frequently spent time with the Lukes sisters. This group smoked marijuana on an almost daily basis. Both defendant and Rosales are Hispanic.
>
> Around 11:00 P.M. that evening, when their supply of marijuana ran out, defendant and Rosales walked to the "Mary Poppins" area, near the house and across a canal, to buy more drugs.[FN1] After defendant and Rosales crossed over the canal, a stranger, later identified as the victim, approached and told them he had

marijuana to sell. The stranger then left, after saying that he was going to talk to his "people." Rosales got nervous and left the area before the stranger came back.

[FN1] Bryan Rosales testified that he purchased drugs from the "Poppins" area either every day or every other day from different individuals. He also stated that he had been robbed on previous occasions while attempting to purchase drugs.

Later, they were approached by the same individual, who asked them if they had any money. Defendant stayed to talk, and Rosales walked away. Rosales testified that he heard sounds of "wrestling" or "tussling," and then he heard "some shots." He then saw defendant and the other man wrestling and he ran back to help defendant by trying to "kick the guy off." Rosales ran up the canal bank, slipping along the way and becoming covered in mud. Rosales returned to the Lukes' house. He stated that when he returned to Claire Avenue that night, he told Opal Lukes that a man had tried to rob defendant. Rosales changed his clothes and walked with Shelby Lukes to a nearby "Brothers" store to pick up some food. While walking, they were stopped by police officers who asked them if they had seen anything suspicious in the neighborhood, to which Rosales replied that he had not. After Rosales picked up the food, they returned to the house on Claire, where defendant and Opal were waiting for them. When Rosales first saw defendant, he appeared to be "a little anxious."

At trial, Rosales testified that he had seen defendant with a gun earlier on the date of the crime. Rosales never saw the victim with a gun, although the victim acted as if he wanted defendant and Rosales to think that he had a gun. However, the victim never pointed a gun at him or at defendant when Rosales was present. Rosales further stated that he heard a total of two or three gunshots. Rosales testified that he and defendant never discussed what had happened that night.

Shelby Lukes testified at trial that earlier on the day of the shooting, defendant showed her a gun and told her that he had stolen it from Lonzell Silas' car. She further testified that when defendant and Rosales left to get marijuana, defendant said that he wanted to rob someone but she did not take him seriously. Shelby Lukes also testified that when Rosales returned to the house, he stated that defendant had shot someone. When defendant returned to the house, it appeared that he had been running and there was blood on this shirt. She asked him what happened and he stated that someone had tried to rob him. Defendant removed his bloody shirt and threw it in the trash can.

Opal Lukes testified that earlier on that day, she had seen defendant with a gun. She remembered that defendant and Rosales went to buy marijuana in the "Mary Poppins" area across the canal. When defendant and Rosales returned, she saw a drop of blood on defendant's face. Defendant stated that someone tried to rob him.

Defendant, Rosales, and the Lukes sisters spent the night in a nearby motel. The next morning Shelby Lukes was contacted by the Gretna Police, and then

brought to the Homicide Bureau, where she gave a statement to the police. At trial Shelby admitted that on the night of the murder, she was taking Xanax for which she did not have a prescription. At the time of trial, Shelby Lukes was imprisoned for possession of heroin.

Opal Lukes and a friend gave defendant and Rosales a ride "across the river." When Opal returned, she was stopped by the police and brought to the station. She gave a statement to police at that time.

Rosales testified that when he and defendant left Opal, they were picked up by the police. They were driven to a police station, and separated. Rosales stated that he did not realize why he had been arrested, until Shelby was brought into the room to speak with him. He later realized that the victim must have been shot during his fight with defendant. At trial, Rosales admitted that he agreed to testify as a part of a plea agreement with the state.[8]

## III. Petitioner's Claims

### A. Sufficiency of the Evidence Claim

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> In his first *pro se* assignment of error, defendant alleges that the State failed to prove his conviction "beyond a reasonable shadow of a doubt." He further argues that his conviction was obtained with the use of unreliable evidence. Because this assignment relates to the sufficiency of the evidence presented, we address it before all other assigned errors as per State v. Hearold, 603 So.2d 731, 734 (La. 1992).
>
> When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, *supra.*
>
> The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. A reviewing court is required to consider the whole record and

[8] State v. Dominguez, 148 So.3d 648, 651-53 (La App. 5th Cir. 2014); State Rec., Vol. 1 of 6.

determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184. A reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745.

In this case, defendant was charged with second degree murder but was convicted of the responsive verdict of manslaughter. La. R.S. 14:31 provides for two separate elemental definitions of manslaughter: specific intent manslaughter and felony/misdemeanor manslaughter.[FN2] Under La. R.S. 14:31 A(2)(a), manslaughter is "a homicide committed, without any intent to cause death or great bodily harm" under circumstances "when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person."

[FN2] The jury verdict form does not specify under which theory of manslaughter the jury found defendant guilty.

The testimony presented at trial established that on the day of May 19, 2009, defendant had been seen carrying a weapon by three witnesses: Shelby Lukes, Opal Lukes, and Bryan Rosales. Shelby Lukes further testified that defendant said that he had stolen the gun from Lonzell Silas' car. Before defendant and Rosales left to purchase drugs that evening, defendant indicated to Shelby Lukes that he wanted to rob somebody. Rosales testified that he and defendant went to purchase marijuana from the area known as "Mary Poppins." Rosales and defendant crossed the canal to get to Mary Poppins. After they crossed over, a stranger, later identified

as the victim, walked up to them and told them that he had marijuana to sell. Rosales and defendant left the area but were approached by the same individual later that night. Rosales testified that he never saw the victim with a gun, although it appeared that he wanted defendant and Rosales to think that he had a gun. The victim never pointed a gun at him, nor did he see the victim point a gun at defendant. Rosales testified that he had walked away while defendant and the individual fought. Rosales said that he ran back to help defendant by trying to "kick the guy off him." After Rosales left defendant and the victim, he heard a total of two or three gunshots. He did not recall seeing anyone else on the canal bank that night. Rosales and defendant never discussed what had happened. Thus, Rosales' testimony established that defendant had been armed previously on the date of the victim's murder and that defendant fought with the victim immediately prior to the shooting. The shooting took place within the context of a sale of narcotics, and evidence established that narcotics were found in close proximity to the victim's body.

Testimony by Shelby Lukes established that defendant returned to the house on Claire Avenue with blood on his clothing after attempting to purchase narcotics. When Rosales returned, he said, "Eddy shot him." When defendant returned to the house, it appeared that he had been running and there was blood on his shirt. Defendant threw his shirt in the trash can. When Shelby Lukes asked defendant what had happened, he said that someone had tried to rob him. Opal Lukes testified that when she first saw defendant after he had returned, he had blood on his face.

There was further testimony that while police were canvassing the area shortly after the shooting occurred, a witness reported seeing a couple of Hispanic males fleeing from the canal bank. The following day, Detective Ashton Gibbs set up undercover surveillance and ultimately found Rosales and defendant, two Hispanic males, who got into a car in a Burger King parking lot. Soon after the car left the Burger King parking lot, one of the Hispanic males lay down in the back seat so that he could not be seen while the car was traveling on the roadway. Police followed Rosales and defendant into New Orleans where they exited the car and began to travel on foot. Defendant later tried to escape apprehension when approached for questioning by police.[FN3]

> [FN3]  Evidence of flight, concealment, and attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the trier of fact may infer guilt. State v. Wilkerson, 403 So.2d 652, 659 (La. 1981).

We find that the State met its burden of offering sufficient evidence to support defendant's conviction beyond a reasonable doubt for felony/misdemeanor manslaughter under the definition and elements provided by La. R.S. 14:31 A(2)(a).

As a second part to this assignment, defendant asks "Was the conviction in this case obtained with the use of unreliable Testimony?" Defendant attacks the credibility of Bryan Rosales, as well as Opal and Shelby Lukes regarding their

testimony in his case. It is not the function of the appellate court to assess credibility or re-weigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. Nevertheless, defendant's arguments are without merit.

Defendant attacks the veracity of Shelby Lukes, who was admittedly on drugs the night that the shooting took place. This Court has previously held that when the issue of a witness' drug use is brought before the jury by a defendant, it is within the jury's discretion to believe or not believe the evidence presented to discredit that witness. The jury's conclusion regarding the credibility of the witnesses is dependent upon its in-court observation, and when faced with a conflict in testimony, the jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Alexander, 12-836 (La.App. 5 Cir. 5/23/13), 119 So.3d 698, writ denied, 13-1981 (La. 3/21/14), 135 So.3d 614.

Defendant questions the contradictions between Opal Lukes' and Shelby Lukes' testimony regarding the amount of blood on defendant when he returned from attempting to purchase drugs. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writs denied, 03-2745 (La. 2/13/04), 867 So.2d 688 and 08-1951 (La. 1/30/09), 999 So.2d 750.

Finally, defendant challenges the credibility of Bryan Rosales, who admitted on the record to having a plea deal with the State. Again, in this instance, the revelation to the jury that Rosales had entered into a plea bargain in exchange for his testimony does go to his credibility. However, the jury was clearly aware that Rosales agreed to testify against defendant in return for a plea agreement and, apparently finding his testimony to be believable, gave it the credibility they believed it deserved. See State v. Foreman, 08-0902 (La.App. 4 Cir. 4/29/09), 10 So.3d 1238. There is nothing in the record to show that the jury abused its discretion in its assessment of credibility, or made factual findings which were manifestly erroneous.

The evidence presented at trial supports the jury's verdict. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of manslaughter beyond a reasonable doubt. We find defendant's first *pro se* assignment of error to be meritless.[9]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[10]

[9] State v. Dominguez, 148 So.3d 648, 653-56 (La App. 5th Cir. 2014); State Rec., Vol. 1 of 6.
[10] State v. Dominguez, 170 So.3d 982 (La. 2015); State Rec., Vol. 1 of 6.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  He has not done so.

As the Louisiana Fifth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact

"twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, petitioner was convicted based on the testimony of Bryan Rosales, Opal Lukes, and Shelby Lukes. Although those witnesses did not actually see petitioner shoot the victim, their testimony established that petitioner was known to have a gun, he was engaged in a drug transaction with the victim at the time of the shooting, the two engaged in a physical altercation, shots were then heard, and petitioner returned from the transaction with blood on his face and

clothes. That testimony was clearly sufficient for the jury to rationally conclude that petitioner was guilty of felony/misdemeanor manslaughter.

Although petitioner argues that the testimony of the three witnesses lacked credibility, determining credibility is within the province of the jury, not this Court. Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## B. Batson Claim

Petitioner's second claim is that the trial court erred in denying his two Batson challenges. With respect to that claim, the record reflects that the state used peremptory challenges to excuse

five prospective jurors from the first panel during *voir dire*: Mr. Myre; Mr. Eaglin; Ms. Johnson; Mr. Liu; and Ms. Carter. At that point, defense counsel objected:

> MR. SPEARS [defense counsel]:
> Here is – Judge, let me just do a quick Batson-esque type challenge.
>
> THE COURT:
> You can do it, I didn't find it though.
>
> MR. SPEARS:
> Well, I just want to make a record.
> The State's used – was it, how many?
>
> CRIMINAL CLERK:
> Five.
>
> MR. SPEARS:
> Five.
>
> THE COURT:
> Challenges.
>
> MR. SPEARS:
> It appears to me that there is a pattern developing. The first challenge was to a black male; the second challenge was to a black male; the third challenge – who was your third one?
>
> THE COURT:
> Three was Ms. Johnson.
>
> MR. SPEARS:
> A black female. The fourth challenge was to an Asian man; and the fifth challenge was to a black female.
> I think there is a pattern of exclusion, deliberately excluding non-whites from the jury, particularly African Americans from the jury.
> I want to make the record –
>
> THE COURT:
> I don't find that. I believe that the panel is equally represented by the population; and all of his challenges were race neutral.
>
> MR. SMITH [the prosecutor]:

I want to add, so the record's clear, the second juror selected, Ms. Sincere, is an African American female. I have no problem with her. I don't – I see – I think the record's clear on everybody who had – was challenged. Mr. Myre said he – he was going to have a difficult time paying attention sitting for too long; Mr. Eaglin said –

MR. SPEARS:
You told him he could stret.. – stretch..

MR. SMITH:
Can I make my record.

MR. SPEARS:
I'm sorry.

MR. SMITH:
That's why I didn't move for cause, that's why I moved for peremptory.
Mr. Eaglin said that he was not guilty on I think three or four juries.
Ms. Johnson is in Head Start and was a social worker listening to – I just – I don't like – I don't like a lot of times people that – in that career, just want to hug everybody, and let's all make up, and we get past this.
So based on that (inaudible words).

(Cross Talk)

THE COURT:
You didn't – you didn't have to give reasons. I didn't find that –

MR. SMITH:
I'm sorry. I just wanted the record to have them.[11]

The *voir dire* of the first panel then concluded, the jurors selected from that panel were sworn, and the court recessed for lunch.

After the recess, the *voir dire* of the second panel was conducted. At the conclusion of the questioning of that panel, the prosecutor then used peremptory challenges to remove six additional prospective jurors: Mr. Tran; Ms. Maxwell; Ms. Rodriguez; Ms. Saul; Ms. Braquet; and Mr.

[11] State Rec., Vol. 5 of 6, transcript of March 20, 2013, pp. 164-66.

Ferguson. At that point, the jury was selected, the jurors from the second panel were sworn, and the remaining prospective jurors were dismissed.

After that occurred, defense counsel stated:

> MR. SPEARS:
> Your Honor, I just want to re-urge my Batson challenge. There is definitely a pattern that has developed. The state has used – was it ten challenges? And of the ten, all but two were used to strike minority jurors; in fact, the State backstruck an Hispanic and an Asian juror just now, that had earlier been accepted. And with the exception of Ms. Maxwell, and I think Ms. Braquet, every other jurors used by the State – was it ten or eleven, Judge, I – my notes show ten.
>
> THE COURT:
> He used eleven.
>
> MR. SPEARS:
> Out of eleven jurors, nine of those challenges were to strike – to strike minority jurors. I think that's a clear pattern, which entitles the Defense to a mis-trial, especially in light of the fact that three of those jurors were accepted earlier.
>
> THE COURT:
> The Court doesn't see it that way, I don't find it to be a pattern. The Court finds that there was all basis for the State to excuse those jurors, as I keep my notes.
> Even on the last panel, Ms. Saul, she indicated she wasn't comfortable being here or anything like that. The state didn't exercise a challenge, they used a preempt; there was a reason for that.
> I don't find there to be any bias or any prejudice in the way they used their peremptory challenges.
>
> MR. SPEARS:
> We would – we would note an objection, Your Honor, and ask for purposes for preserving the record in the event this has to be reviewed, that the State, whether now or by proffer, indicate the specific reasons for the jurors – I think the State's already indicated specific reasons for jurors that were challenged in the first panel, but they've now eliminated three more from the first panel. And so I would ask if the State could put on the record, in case there's a need for appellate review, the specifics as to what was the legitimate basis for those challenges.
>
> THE COURT:
> Well, I'll let you get away with it this time, Mr. Spears, but normally when we're in court, whoever does the panel makes the argument.

MR. SPEARS:

Oh, I apologize, Your Honor.

But some of those did come from my panel –

THE COURT:

I understand.

MR. SPEARS:

-- because he back struck.

THE COURT:

I understand. But all the ones you're complaining about now are from this last panel.

Mr. Smith, go ahead and perfect it.

MR. SPEARS:

No, no, he took three from the first –

THE COURT:

Well not Ferguson, Braquet, and the rest of those challenges.

MR. SPEARS:

Yeah, but Ms. Rodriguez was Hispanic, Mr. Tran was Asian; and they were in the first panel that I did do.

THE COURT:

Alright.

Do you feel the need to perfect the record?

MR. SMITH:

I mean, I think that the statement made that I used nine of my challenges on minorities is factually incorrect; I mean on the last panel alone, Mr. Ferguson, Ms. Braquet, Ms. Maxwell, um, -- and just because somebody has a Hispanic last name does not trigger Batson; I mean she was – she was as American as anybody else in here, and – that has absolutely nothing to do with the reasons.

I stated the reasons for striking the jurors I did. Ms. Saul, I think the record was clear, she said she doesn't want to be here, and certainly I – that's not the type of juror that I want on a case. Is one who has no interests in hearing the case before them.

I've made the decision that's how I wanted to exercise my challenges, because I thought that there were better suited jurors on this panel; and that's why the law allows backstrikes.

THE COURT:

> Alright.
>
> As I said, I'll accept that. As I've already stated, I didn't find there to be any pattern, all the challenges were race neutral, all a part of the State's strategy to get the jurors selected.
>
> So, I'll note it for the record; but I'll deny it. [12]

On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied petitioner's Batson claims, holding:

> [D]efendant argues that the trial court erred in denying his Batson challenge in light of the State's pattern of strikes during *voir dire*. Defendant does not allege a pattern of prejudice against a specific race or suspect class by the State, but claims "a pattern of discrimination against minorities."
>
> The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson decision is codified in La.C.Cr.P. art. 795C, which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror. State v. Massey, 11-357 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, 467, writ denied, 12-0991 (La. 9/21/12), 98 So.3d 332. Article 795C further provides that if an objection is made that the State or defense has excluded a juror solely on the basis of race, and a *prima facie* case supporting that objection is made by the objecting party, the court may demand a satisfactory race neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the *voir dire* examination of the juror. Massey, 91 So.3d at 467.
>
> In Batson, the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of prospective jurors were based on race. Massey, 91 So.3d at 467 (citation omitted). Under Batson and its progeny, the defendant challenging the peremptory strike must first establish a *prima facie* case of purposeful discrimination. Id. 91 So.3d at 467-68. Second, if a *prima facie* showing is made, the burden shifts to the State to articulate a neutral explanation for the challenge. Id. 91 So.3d at 468. Third, the trial court then must determine if the defendant has carried the ultimate burden of proving purposeful discrimination. Id.
>
> In the first step, to establish a *prima facie* case, the defendant must show: (1) the prosecutor's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the potential juror because he or she is a member of that cognizable group. Massey, *supra*. This initial three-prong showing by the defendant gives rise to "the necessary inference of purposeful discrimination" by the prosecutor. "The inference is 'necessary' because if such an

[12] State Rec., Vol. 5 of 6, transcript of March 20, 2013, pp. 219-22.

inference cannot be drawn from the evidence presented by the defendant, he is unable to make a *prima facie* case of purposeful discrimination and his Batson challenge expires at the threshold." If the trial court determines the defendant failed to establish the threshold requirement of a *prima facie* case, then the analysis is at an end and the burden never shifts to the prosecutor to articulate neutral reasons. Id.

Considering the first jury panel called, the record is clear that the trial court did not find that defendant had established a *prima facie* case of purposeful discrimination by the State. With respect to the requirement that the challenges were directed at a cognizable group, the record contains no identification of or reference to the race or ethnicity of the stricken jurors against whose peremptory dismissals the Batson challenges were made by defense counsel.

Assuming, however, that defendant had established that the prosecutor's challenges were directed at members of a cognizable group, the record definitely reflects that the State's challenges in question were all peremptory and therefore the second prong was met.

However, considering the third requirement of showing purposeful discrimination, the transcript reveals that when making his Batson challenge defendant failed to specifically identify any jurors or state the cognizable group to which each stricken juror belonged as the basis to his challenge. Nor did he allege how the State was discriminatory, except a general allegation of "a pattern of discrimination against minorities." Such identification and specificity is necessary so that a juror-by-juror assessment can be made to determine whether the *voir dire* examination and the stricken juror's responses support a race neutral basis for exercise of a peremptory challenge, or the existence of purposeful discrimination. To the extent that any review could be made by this court, there was nothing obvious in the record of the *voir dire* colloquy that might have raised a reasonable inference of exclusion based on race. The State exercised five peremptory challenges. One challenge was against a juror who told the court that a medical condition would make it "absolutely impossible" for him to serve, in addition to medication he was taking that made it difficult for him to pay attention.[FN4] A second juror stated that he had previously served on at least four criminal juries, including one for a capital case, where the defendant had been found not guilty.[FN5] A third juror was a social worker, a profession that might make her more sympathetic to the defendant.[FN6] Thus, the trial court did not err in its conclusion that defendant did not establish a *prima facie* case of purposeful discrimination as to the jurors in the first panel.

> [FN4] In State v. Tucker, 591 So.2d 1208 (La.App. 2 Cir. 1991), writ denied, 594 So.2d 1317 (La. 1992), the second circuit found that under similar circumstances a racially neutral reason for a peremptory strike existed.

[FN5] In State v. Dabney, 91-2051, 633 So.2d 1369 (La.App. 4 Cir. 3/15/94), writ denied, 94-0974 (La. 9/2/94), 643 So.2d 139, the fourth circuit upheld as race-neutral reason using peremptory challenges on jurors based upon how he or she rendered a verdict as a juror in a previous trial.

[FN6] In State v. Juniors, 03-2425 (La. 6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006), the Louisiana Supreme Court found that a prosecutor's concern that a prospective juror's occupation might result in him being more compassionate to a defendant was a sufficient race-neutral reason for a peremptory challenge.

With regard to the second jury panel, the record shows that defendant's Batson challenge to other jurors was not made until after all jurors and alternates had been chosen and sworn in and those not chosen from the jury panel were discharged. A Batson challenge made at that point in the proceedings is untimely. "In order to preserve the complaint that the prosecutor's use of a peremptory exception was based on race, the defense must make an objection before the entire jury panel is sworn." State v. Williams, 524 So.2d 746 (La. 1988). The ruling, and thus the prerequisite Batson objection, must be made at a time when the trial court can correct any misuse of peremptory challenges. Id.; See also State v. Lamark, 584 So.2d 686 (La.App. 1st Cir. 1991). Although jurisprudence has indicated that Batson objections should at least be made "at some time before the completion of the jury panel," in order to fulfill the purpose of that principle, a defendant must make a Batson objection contemporaneously with the State's exercise of the allegedly racially biased peremptory challenges, or at the least, reasonably soon enough thereafter that the stricken jurors have not been dismissed from service. An objection made even before the entire jury panel is sworn and completed is untimely if the prospective jury has been chosen, individually sworn and dispensed to return at a subsequent date, and those against whom the State has allegedly misused its peremptory challenges have been dismissed completely. State v. Aubrey, 609 So.2d 1183 (La.App. 3 Cir. 1992).

An objection raised untimely, as in the present case, does not allow the trial court the opportunity to correct any misuse of peremptory challenges. A timely objection would allow a trial court to rule on a Batson objection in time for the trial court to correct the error by reinstating the improperly challenged jurors. State v. Aubrey, *supra*. Additionally, "[a]n obvious advantage of a prompt ruling on Batson objections is that memories are fresh and a better record can be made of such relevant factors as the race and the demeanor of the jurors, the neutral reasons for challenging the jurors [.]" State v. Williams, *supra*, at 746 n. 4.

By failing to timely assert his Batson claim, and in the absence of a contemporaneous objection, defendant waived his alleged claims of discrimination.

> State v. Potter, 591 So.2d 1166 (La. 1991). Considering the foregoing, we find no merit to this assignment of error.[13]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[14]

For the following reasons, the undersigned finds that petitioner's Batson challenge as to the first panel has no merit, while his Batson challenge as to the second panel is procedurally barred from federal review.

**1. The First Panel**

As the state court noted, petitioner's claim must be analyzed under the three-step process established in Batson v. Kentucky, 476 U.S. 79 (1986). Specifically:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008) (quotation marks and brackets omitted).

In the instant case, defense counsel made his first Batson challenge during the *voir dire* of the first panel. He attempted to establish a prima facie case of discrimination by observing that the prosecutor had, at that point, used his peremptory challenges against only "non-whites," specifically four African-Americans and one Asian.

As a preliminary matter, the undersigned notes that it is not clearly established that a prima facie case under Batson can be established by lumping together non-Caucasians of *different* races.

[13] State v. Dominguez, 148 So.3d 648, 656-58 (La App. 5th Cir. 2014); State Rec., Vol. 1 of 6.
[14] State v. Dominguez, 170 So.3d 982 (La. 2015); State Rec., Vol. 1 of 6.

Although the United States Second Circuit Court of Appeals has found this permissible,[15] the United States Supreme Court has not spoken on this issue.

Nevertheless, even if the Asian citizen is disregarded, African Americans obviously constitute a "cognizable racial group" for Batson purposes, and the fact remains that four of the five peremptory challenges were exercised against African Americans.  That fact alone arguably suffices at the first step of Batson.  See Stewart v. Stalder, Civ. Action No. 06-1807,  2007 WL 1890706, at *7 (E.D. La. June 28, 2007) ("Utilization of all or nearly all peremptory challenges against jurors of one race has previously been found sufficient to establish a *prima facie* case of racial bias."); see also United States v. Jynes, 197 Fed. App'x 351, 353 (5th Cir. 2006) ("As an African-American, [defendant] is a member of a cognizable racial group, and further, the prosecutors used all six of their peremptory challenges to remove African-Americans from the jury pool.  That alone is enough to raise the inference of purposeful discrimination.").

---

[15] In Green v. Travis, 414 F.3d 288, 297-98 (2nd Cir. 2005), the Second Circuit held:

> [A] defendant raising a Batson claim of purposeful racial discrimination does not have to demonstrate that all venirepersons who were peremptorily excused belong to the *same* "cognizable racial group."  Powers [v. Ohio, 499 U.S. 400 (1991),] makes clear that the only continuing relevance of Batson's "cognizable racial group" language is the requirement that a defendant alleging purposeful racial discrimination in the exercise of peremptory strikes must demonstrate that a peremptorily excused venireperson was challenged by reason of being a member of some "cognizable racial group."  Cf. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712 ("The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.").  It is indisputable that one venireperson cannot be excluded from a jury on account of race.  *A fortiori*, several venirepersons of different races cannot be excluded from a jury on account of race.

Moreover, in any event, the prosecutor in fact gave his reasons for his challenges.[16] Accordingly, the issue of whether defense established a prima facie case at the first step of Batson is arguably moot:

> Where … the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the Batson analysis. See United States v. Broussard, 987 F.2d 215, 220 n. 4 (5th Cir. 1993) (declining to decide whether defendant had established prima facie case of racial discrimination, where district court required explanation for peremptory strikes).

United States v. Williams, 264 F.3d 561, 571 (5th Cir. 2001); see also Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.").

At the second step, the burden shifts to the striking party to articulate a race neutral explanation for striking the jurors in question. Snyder, 552 U.S. at 476. However, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." Batson, 476 U.S. at 97. On the contrary, "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the *facial validity* of the prosecutor's explanation. Unless a discriminatory intent is *inherent* in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez, 500 U.S. at 360 (emphasis added). The prosecutor's stated reasons for removing the

---

[16] Unfortunately, the transcript is problematic on this point. The prosecutor clearly stated his reasons for challenging Myre, Eaglin, and Johnson. However, the transcript reflects that the court reporter was then unable to transcribe a portion of the following discussion because of "cross talk." State Rec., Vol. 5 of 6, transcript of March 20, 2013, p. 166. It is therefore unclear if the prosecutor gave reasons for the challenges of Liu and Carter during that the portion of the discussion which could not be transcribed.

jurors were not inherently indicative of discriminatory intent: Myre was removed on the basis that he stated that he might be unable to concentrate due to discomfort he experiences from sitting for prolonged periods; Eaglin was removed because he had been a juror on four criminal cases in which the defendants were found not guilty; and Johnson was removed because she was a social worker.[17]

At the third step, the trial judge evaluates "the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Rice v. Collins, 546 U.S. 333, 338 (2006). As noted, the trial judge in the instant case found that the prosecutor did not exercise his peremptory challenges in a discriminatory manner.

A state court's finding on Batson's third step is a finding of *fact* and, as such, must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to factual determinations. Therefore:

> Under AEDPA, … a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant [the petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence." § 2254(e)(1).

Rice, 546 U.S. at 338-39 (2006); accord Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (Batson's third step "turns on factual determinations, and, in the absence of exceptional circumstances, we defer to state court factual findings unless we conclude that they are clearly erroneous." (quotation

[17] As noted, the transcript is unclear as to whether the prosecutor gave reasons for removing Liu and Carter. If he did, the court reporter was unable to transcribe that portion of the proceeding due to "cross talk."

marks omitted)); Murphy v. Dretke, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue of fact that is accorded great deference and will not be overturned unless clearly erroneous." (quotation marks omitted)). Therefore, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, … on habeas review that does not suffice to supersede the trial court's credibility determination." Rice, 546 U.S. at 341-42; accord Wood v. Allen, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

In the instant case, petitioner simply has not met his burden to establish that the state court's ultimate conclusion that the strikes were not racially motivated was *unreasonable*. He has offered no evidence – and certainly no "clear and convincing evidence" – of a discriminatory motive.[18] Accordingly, applying the deferential standard of review mandated by the AEDPA, this Court should deny his Batson claim as to the first panel.

**2. The Second Panel**

As noted, petitioner additionally claims that his rights were violated when the trial court denied defense counsel's subsequent Batson challenge asserted after the jurors from the second panel were selected and sworn. The state argues that claim is procedurally barred. The state is correct.

The United States Fifth Circuit Court of Appeals has held:

[18] For example, a petitioner can sometimes establish discriminatory motivation by showing that the prosecutor's proffered reasons for the challenge applied to other jurors who were not challenged. See Miller-El v. Dretke, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."). However, petitioner has not argued, much less shown, that is the case here. Moreover, a review of the *voir dire* transcript makes clear that he could not make such a showing in this case.

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

As noted, in the last reasoned state court opinion addressing petitioner's second Batson claim, the Louisiana Fifth Circuit Court of Appeal held that the claim was waived due to defense counsel's failure to make his objection in a timely manner. That procedural rule is obviously independent of the merits of the federal claim. Parker v. Cain, Civ. Action No. 07-8856, 2008 WL 4534096, at *16 (E.D. La. Oct. 7, 2008). Therefore, the Court needs only to determine whether the rule was "adequate."

"The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997). Here, petitioner has made no attempt whatsoever to establish that the rule was not strictly or regularly followed.

Moreover, in any event, the rule invoked is premised on Louisiana's rule that an error is waived unless a contemporaneous objection is made. Parker, 2008 WL 4534096, at *16; see also State v. Juniors, 915 So.2d 291, 316 (La. 2005) (applying the contemporaneous objection rule to a Batson claim); State v. Williams, 524 So.2d 746 (La. 1988) (same). The United States Fifth Circuit Court of Appeal has clearly held that Louisiana's contemporaneous objection rule is an independent and adequate state procedural rule. Duncan v. Cain, 278 F.3d 537, 541-43 (5th Cir. 2002).

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has not argued, much less established, cause for this procedural default. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, this claim is barred from federal review unless the application of the procedural bar would result in a "fundamental

miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner presents no new evidence of the type or caliber referenced in Schlup. Moreover, ample evidence of his guilt was introduced at trial. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claim challenging the trial court's denial of the second Batson challenge is procedurally barred and should not be considered by this Court.

**C. Juror Bias Claim**

In his third claim, petitioner argues that the trial court erred in denying a defense motion to excuse juror Kay Evens for cause on the basis that she knew one of the police officers on the case, Detective Russ, and because her brother had been affected by drug use. However, the fatal flaw with respect to this claim is that Evans did *not* actually serve on the jury in this case because defense counsel used a peremptory challenge to remove her.[19] Where, as here, a potential juror is

[19] State Rec., Vol. 5 of 6, transcript of March 20, 2013, p. 156.

removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is not entitled to habeas relief unless he demonstrates that the jury ultimately selected to try the case was not impartial. Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988). Because petitioner has not even alleged, much less shown, that the jury ultimately selected was not impartial, this claim necessarily fails. Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011).

**D. Ineffective Assistance of Counsel Claim**

Lastly, petitioner claims that he received ineffective assistance of counsel at trial. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> [D]efendant contends that he received ineffective assistance of trial counsel. Specifically, defendant asserts that counsel should have hired an expert to explore the impact that drug use had on Shelby Lukes' testimony and to expose "the impossibility of Shelby Lukes testimony." Defendant also claims that "[c]ounsel should have hired an investigator for this case, the prosecution theory of this case does not 'Comport' with Justice and Fundamental Fairness."
>
> The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. According to the United States Supreme Court's opinion in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: 1) that defense counsel's performance was deficient, and 2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
>
> Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. Where the record does not contain sufficient

> evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La-C.Cr.P. arts. 924-930.8. Taylor, *supra*. In this case, we conclude that the record is sufficient to allow a review of defendant's ineffective assistance claims on appeal.
>
> With respect to defendant's first claim pertaining to Shelby Lukes, the record demonstrates that defense counsel thoroughly explored the issue of Lukes' drug use on cross-examination. Defense counsel established that Lukes was a recovering drug addict. Defense counsel questioned Lukes specifically on how her use of drugs may have affected her memory of the night in question and established that she had used Xanax and marijuana. Lukes admitted on cross-examination that because of her use of Xanax on that night she "forgot a lot of things." The jury also heard Lukes admit on re-direct examination that the amount of Xanax she was using resulted in her remembering only "bits and pieces" of the events that occurred that night. Because defendant's trial counsel made the full extent of Lukes' drug use known to the jury for their consideration, his performance was not deficient under the first prong of Strickland, *supra*.
>
> Defendant also makes a general claim that "[c]ounsel should have hired an investigator for this case." However, it is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. State v. Brogan, 453 So.2d 325 (La.App. 3 Cir.), writ denied, 457 So.2d 1200 (La. 1984). Because defendant's argument here lacks specificity on how he was prejudiced by his defense counsel's performance, defendant has not met his burden of satisfying the first prong under Strickland, *supra*.
>
> Finally, to the extent that defendant argues under the heading of ineffectiveness of counsel that "the prosecution theory of this case does not 'Comport' with Justice and Fundamental Fairness," we have found that the evidence presented by the State at trial was sufficient for a conviction. Defendant's claims of ineffective assistance of counsel are without merit.[20]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[21]

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

[20] State v. Dominguez, 148 So.3d 648, 662-63 (La App. 5th Cir. 2014); State Rec., Vol. 1 of 6.
[21] State v. Dominguez, 170 So.3d 982 (La. 2015); State Rec., Vol. 1 of 6.

U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United

States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an

ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because it is beyond question that the state court correctly identified Strickland as the controlling federal law, the only remaining issue is whether its application of Strickland was unreasonable. For the following reasons, it was not.

As to petitioner's claim that his counsel was ineffective for failing to secure an expert to testify concerning the impact that drug use had on Shelby Lukes' testimony, the state court found that such testimony was unnecessary in light of the fact that Lukes' drug use and resulting memory problems were established through her own testimony. The record supports that conclusion.[22] Moreover, in any event, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence, such an as affidavit from a "drug use" expert, showing that he or she was available and would have testified in a manner beneficial to the defense. Therefore, petitioner obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great

[22] On cross-examination, Lukes testified: "I was on Xanax that night, so, I forgot a lot of things." State Rec., Vol. 3 of 6, transcript of March 20, 2013, at p. 87. She stated that she had taken "[m]aybe four" Xanax that night and admitted that she had also smoked "weed." Id. Moreover, the point was further reiterated on re-direct examination, with Lukes testifying that she remembered only "bit and pieces" of what occurred that night due to her drug use. Id. at 96.

caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner's next claim is that his counsel was ineffective for failing to hire an investigator to secure evidence to undermine the prosecution's theory of the case. However, as an initial matter, the Court notes that petitioner has failed to establish that counsel's investigation without an investigator was actually inadequate in any respect. In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently. Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice in fact resulted from the failure to hire an investigator. To make that showing, he must point to evidence in the record demonstrating that further investigation would have revealed

additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec.11, 2008).  Here, petitioner has not shown that any such beneficial information would have been revealed by further investigation; rather, his assertions are entirely speculative.  It is beyond cavil that such bare speculation does not suffice to meet his burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He clearly has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Eddie Dominguez be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this tenth day of March, 2017.

Janis van Meerveld

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

[23] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.